UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITAL DISTRIBUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PEPPERIDGE FARM, INCORPORATED,<br><br>Defendant. | Case No.: 2:22-cv-00319-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

By way of this action, Plaintiff Vital Distributions, LLC, ("Plaintiff") seeks to recover from Defendant Pepperidge Farm, Inc., ("Defendant") for various injuries arising out of Defendant's purported breaches of the parties' "Consignment Agreement" (hereafter "Agreement"). Presently before the Court is Defendant's Motion to Dismiss each of Plaintiff's claims, ECF No. 20,[1] and its Motion for Protective Order Staying Discovery Pending Resolution of the Motion to Dismiss, ECF No. 28. For the following reasons, the Motion to Dismiss is DENIED, and the Motion for Protective Order is DENIED as moot.[2]

---

[1] Although Defendant's Notice of Motion includes a reference to Federal Rule of Civil Procedure 12(f), the Court does not construe this as a Motion to Strike and those references will be disregarded.

[2] Because oral argument would not have been of material assistance, the Court ordered these matters submitted on the briefs. E.D. Local Rule 230(g).

1

# BACKGROUND[3]

## A. The Contract

Defendant is a producer of baked goods, including a wide assortment of cookie and cracker snacks.  Its distribution system relies almost entirely on independent distributors who pay substantial sums of money to acquire discrete rights to distribute Defendant's products within certain well-defined territories.  In August 2017, Plaintiff entered into the Agreement with Defendant, giving Plaintiff the exclusive right to distribute Defendant's products within its defined territory, extending through much of California's Yolo and Sacramento counties.

Under the Agreement, Plaintiff earns commissions on the sale and distribution of consigned products to "retail stores," a term that is not defined in the parties' contract. The Agreement's Schedule A nonetheless does explain that:

> Retail Stores "fronting" on any thoroughfare or boundary described herein (unless otherwise specified) are deemed to belong to this distributorship territory.  The term "fronting" as used in this Description of Territory shall have the same meaning as "facing."  Unless specified otherwise, a Retail Store is deemed to be "fronting" the road on which its primary address is located.

FAC, ECF No. 14, Ex. A.

At the time the parties executed the Agreement, Defendant also purportedly included an additional document for Plaintiff's consideration, an "E-Commerce Acknowledgment" (hereafter "Acknowledgment").  That document asked Plaintiff to acknowledge the following:

> Consignee agrees and acknowledges that any e-commerce, internet sites or other electronic commerce points of sale and their associated warehouses or other facilities operated by such accounts ("E-Commerce Accounts") are not retail stores as such term is used in the Consignment Agreement. Consignee agrees and acknowledges that Consignee neither has nor will acquire any rights whatsoever (whether under the

---

[3] Unless otherwise indicated, the following facts are taken, primarily verbatim, from Plaintiff's First Amended Complaint ("FAC"), ECF No. 14.

> terms of the Consignment Agreement or otherwise), with respect to the E-Commerce Accounts or the distribution of Consigned Products thereto.
>
> From time to time however and at [Defendant's] sole discretion [Defendant] and [Plaintiff] may enter into separate letter agreement to distribute, on temporary non-exclusive basis only, Consigned Products to warehouses or other facilities operated by E-Commerce Accounts located within the territory.  Any such authorization shall be documented pursuant to mutual written agreement.

FAC, ECF No. 14, ¶ 20.

According to Plaintiff, it reviewed the Acknowledgment at the time of signing and made it clear to Defendant's representative, who was present in person, that Plaintiff did not agree to its terms.  In fact, Plaintiff believed the opposite—namely, that e-commerce, internet sites, or other electronic commerce points of sale and their associated warehouses or other facilities operated by such accounts are in fact "retail stores" under the circumstances alleged herein.

More specifically, Plaintiff contends, it recognized the growth potential within the territory, not only based upon those retail stores not currently being served, but also new retail store construction and through the expansion of sales and distribution of consigned products through e-commerce and the warehouses and other facilities operated by such entities and sites.  Because the territory includes the Sacramento Airport and the stretch of I-5 from Natomas to the Sacramento Airport, Plaintiff anticipated significant future growth of physical warehouses and other facilities within the territory to fulfill online retail sales.

Indeed, when Plaintiff acquired the distributorship, it was aware of the location within the territory of the major fulfillment center (and smaller fulfillment centers) that online retailer Amazon maintained within the territory.  Plaintiff was also well aware that Amazon made and would in the future make retail sales to the public using its fulfillment center and other facilities within the territory to fulfill those orders and purchases.

Defendant's representative indicated that it might not approve Plaintiff's acquisition of the territory absent its agreement to the Acknowledgment, and Plaintiff

3

again made it clear it was not going to sign the Acknowledgment because, in its view, the largely untapped Amazon fulfillment centers and related "warehouses or other facilities" were a significant factor behind Plaintiff's decision to acquire this particular territory in the first instance.  Plaintiff likely would not have proceeded with the Agreement if Defendant had required Plaintiff to sign the Acknowledgment as a condition of approval.  In any event, Defendant eventually approved Plaintiff's acquisition of its territory even absent Plaintiff's agreement to the Acknowledgment.

Under the Agreement, Plaintiff received commissions under several circumstances.  First, and most obviously, Plaintiff is paid for physically receiving and delivering consigned products to retail stores physically located within its territory.  Second, Plaintiff is compensated pursuant to Defendant's pallet delivery program.[4]  Finally, Plaintiff receives commission for products sold online (e.g., by Safeway, Raley's, or Walmart), fulfilled through territory retail stores, and delivered directly to end consumers.

One of the few exceptions to Plaintiff's exclusive rights is when a "chain" (defined as "any person, firm, corporation or other legal entity that owns or operates three or more retail stores") refuses to handle consigned products except via warehouse delivery.  FAC, ECF No. 14, Ex. A, ¶ 9.  However, before Defendant can deliver to such warehouses for its own account, two express conditions precedent must be satisfied.  First, both Plaintiff and Defendant must make "good faith efforts" to obtain permission from the chain to make deliveries directly to its retail stores.  Id.  Second, despite such good faith efforts, the chain must nevertheless refuse to handle delivery of consigned products except via warehouse delivery.  Id.

Plaintiff alleges on information and belief that in contradiction of these terms, Defendant has delivered to several retail stores within its territory for Defendant's own

---

[4] The terms of the pallet delivery program are set forth in a separate agreement.  See FAC, ECF No. 14, Ex. B.  Under that program, in which Plaintiff agreed to participate, Plaintiff receives commissions for products sold in palletized form to customers (e.g., to warehouse stores) in its territory despite never taking physical delivery of those products.

4

account, without the two express conditions first being satisfied in good faith.  These retail stores purportedly include, but are not limited to, Grocery Outlet, BevMo, and Dollar Tree.

Finally, the Agreement also provides parameters for the amount of product to be provided to Plaintiff.  Defendant is obligated to deliver sufficient quantities of consigned products so as to enable Defendant to "maintain at all times, an adequate and fresh supply thereof in all retail stores in the Territory . . . ."  FAC, ECF No. 14, Ex. A, ¶ 2.  "If overall demand for its products exceeds production," however, Defendant "reserves the right to allocate its products as nearly proportionately as practicable."  Id.

### B.   The Parties' Course of Conduct

Between 2017 and 2020, the Amazon Retail Stores were largely a non-issue because Plaintiff believed that Defendant was not distributing products to Amazon for sale to end-consumers.  Instead, Plaintiff believed it was being compensated for all online sales facilitated through retail stores as alleged herein (e.g., Safeway, Raley's, Walmart) when fulfilled with consigned products located within the territory.

Around the outset of the COVID-19 pandemic in 2020, however, consumer panic buying, stockpiling, and other changes in consumer shopping behavior sent demand for consigned products soaring.  Grocery store shelves were routinely empty.  In turn, for the first time, Defendant claimed demand exceeded supply and began allocating products to distributors pursuant to Paragraph 2 of the Agreement.

Around the same time, e-commerce demand and sales skyrocketed, and Defendant took notice of the opportunity.  Several months into the pandemic, as Defendant's manufacturing normalized and supply resumed, Plaintiff continued to receive massive product cuts each week.  For example, for at least 18 months, Plaintiff received less than 50 percent of the product it ordered each week—an insufficient supply to keep the retail stores in the territory adequately stocked, and in turn, damaging the relationship between Plaintiff and certain retail stores that Plaintiff had spent years building.

While Defendant continued to cite COVID-19 as the cause of the supply shortage, Plaintiff discovered massive amounts of consigned products were nonetheless available for retail sale via the Amazon Retail Stores.  In fact, Plaintiff discovered a stand-alone Amazon webpage referred to as the "Pepperidge Farm Goldfish Store."

According to Plaintiff, Defendant's contention that it had and continues to have insufficient supply to fulfill Plaintiff's weekly orders is and was false, pretextual, and belied by reports published by Defendant's own parent company, the Campbell Soup Company ("Campbell's").  Campbell's has allegedly confirmed gains in the sale of certain products from Defendant, including Goldfish crackers.  Specifically, 2021 sales are reported to have exceeded 2020 sales.  Campbell's also reports massive gains through e-commerce sales, with executives of Campbell's specifically acknowledging the increasing popularity of grocery shopping online.  Plaintiff thus believes that Defendant is capitalizing on changes in consumer shopping behaviors at the expense of Plaintiff and other distributors and is using the pandemic as an excuse to redirect its products away from distributors like Plaintiff and toward online retailers (e.g., Amazon) for which Defendant is refusing to pay Plaintiff commissions.  Plaintiff thus alleges that Defendant's e-commerce sales growth evinces not a decline in overall product inventory, but rather a disproportionate allocation of its products away from Plaintiff.

The lack of product available to Plaintiff meant it could not supply product to retail stores in its territory as it saw fit, and stores' customers, in turn, resorted to ordering from e-commerce sites.  To that end, at the same time that Defendant denied having any such product for Plaintiff, Plaintiff was able to confirm that the same products were readily available in abundance through Amazon.  More specifically, Plaintiff confirmed that it could order those same products on Amazon in bountiful fashion, the retail sale would be settled, and the order would be fulfilled with consigned products physically located within the Amazon facilities within Plaintiff's territory.  The product would then be delivered within the same day, and at times, within a few hours, to the end-consumer. Defendant declines to pay Plaintiff commissions for these sales on the basis that sales

placed through Amazon do not constitute sales made through "retail stores" in Plaintiff's territory and are thus not covered by the Agreement.

### C.     This Litigation

Plaintiff thus initiated this action setting forth claims for breach of contract, breach of the implied covenant of good faith and fair dealing, an accounting, and declaratory relief.  Defendant seeks to dismiss each cause of action as insufficiently pled.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

///

///

///

# ANALYSIS

### A.  Breach of Contract

Plaintiff contends Defendant breached the Agreement in multiple ways by: (1) failing to deliver sufficient quantities of consigned products despite having the inventory and production capacity to do so; (2) failing to properly allocate product to Plaintiff; (3) selling consigned products directly to retail stores within Plaintiff's territory, including at least one wholesale distributor; (4) refusing to pay Plaintiff commissions on sale of consigned products through Amazon when those products were being sold to consumers located within Plaintiff's territory; and (5) delivering consigned products to chains (e.g., Grocery Outlet, BevMo, and Dollar Tree) without satisfying the two conditions set forth in Paragraph 9 of the Agreement.  Defendant seeks dismissal as to each of these arguments on the basis that Plaintiff:  (1) failed as a matter of law to plead that it is entitled to receive commissions for e-commerce sales because such sales are not made by "retail stores"; and (2) has pled insufficient facts to support its remaining breach of contract theories.  The Court disagrees.

### 1.  Whether Plaintiff is entitled to commissions for e-commerce sales

According to Defendant, the term "retail store" as used in the Agreement is unambiguous and includes only brick and mortar retail locations physically frequented by customers, as opposed to including e-commerce merchants.  If correct, it follows, Plaintiff is not entitled to relief on that theory.  Plaintiff, on the other hand, argues that it has plausibly alleged that Amazon has brick and mortar facilities within the territory that are responsible for fulfilling retail orders placed through Amazon's web-based sales platform, thus bringing those sales within the scope of the Agreement.

The Court finds that Plaintiff has plausibly alleged that the term "retail stores" is ambiguous and is susceptible to the meaning Plaintiff gives it.  "Under the plain meaning rule, courts give the words of the contract or statute their usual and ordinary meaning." Valencia v. Smyth, 185 Cal. App. 4th 153, 162 (2010).  In this case, the term "retail

stores" is undefined in the Agreement itself, and it is thus difficult for the Court to apply the limitations Defendant suggests at the motion to dismiss phase of litigation, where it takes the allegation in the FAC as true and construes them in favor of the nonmoving party.  It is reasonable based on Plaintiff's factual allegations to conclude that "retail stores" include e-commerce sales made through brick and mortar locations located within the territory.[5]  Indeed, these types of sales are arguably no different than online sales made through traditional grocery store websites, which are fulfilled by a brick and mortar store and delivered directly to the customer without the customer ever setting foot inside a store.  Such sales are indisputably covered by the Agreement.[6]

The Court need not determine now what the actual definition of "retail stores" is for purposes of this Agreement.  It is enough that the Court finds Plaintiff's interpretation is plausible.  Accordingly, to the extent Defendant's Motion is based on the theory that online retailers cannot constitute retail stores under the Agreement, it is thus DENIED.[7]

**2.    Plaintiff's remaining breach of contract arguments**

Aside from arguing that Defendant improperly failed to pay commissions for covered e-commerce sales, Plaintiff also contends Defendant breached the Agreement by:  (1) failing to deliver sufficient quantities of consigned products; (2) failing to sufficiently allocate product to Plaintiff when overall demand exceeded production; (3) delivering directly to, or authorizing third parties to deliver directly to, retail stores within Plaintiff's territory; and (4) delivering consigned products to chains within the territory without satisfying the conditions precedent set forth in Paragraph 9 of the Agreement.

---

[5] In fact, it seems to the Court that the question is not necessarily whether Amazon and other such retailers qualify as "retail stores," but is instead whether those online retailers are located within the territory.  That, however, is a question for another day.

[6] This conclusion is not changed by Defendant's argument that, unlike with grocery stores, Plaintiff never distributed the product to the brick and mortar locations at issue in this case and thus is not entitled to a commission for those sales.  That argument ignores the crux of Plaintiff's position—that it was entitled to distribute to those locations in the first place but was never given the chance.

[7] Given this holding, the Court also need not rely on extrinsic evidence at this juncture, and it declines to take judicial notice of the various dictionary definitions proffered or the Acknowledgment in its entirety.

Each of these arguments are plausibly set forth with sufficient factual support in the FAC. Defendant's arguments to the contrary all raise factual disputes as opposed to identifying pleading shortcomings.  The Court will not resolve such factual disputes under the auspices of Rule 12(b)(6).  Accordingly, Defendant's Motion to Dismiss Plaintiff's Breach of Contract cause of action is DENIED.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

According to Plaintiff, the Agreement vests Defendant with various discretionary powers (e.g., to adjust quantities of consigned products allocated to Plaintiff based on Defendant's assessment that "overall demand for its product exceeds production" and that the modified allocation would be "as nearly proportional as practical") under various provisions, but Defendant purportedly failed to exercise its discretion in good faith. Defendant seeks to dismiss this cause of action on the basis that:  (1) Plaintiff cannot state a claim under the implied covenant because it failed to state a claim for breach of contract; (2) this claim is redundant of the breach of contract cause of action; and (3) Plaintiff has not alleged sufficient facts to state a claim in any event.

Defendant's arguments are unpersuasive.  Plaintiff's FAC sets forth precisely what one would expect to see in a breach of the implied covenant of good faith and fair dealing claim, alleging at base that:  (1) Defendant was granted discretion; (2) Defendant was expected to exercise that discretion in good faith as that term is implied in the contract; and (3) Defendant did not in fact act in good faith.  What is set forth is a classic breach of implied covenant claim, and Defendant's Motion is thus DENIED.

### C. Accounting

As to this cause of action, Plaintiff takes the position that Defendant owes it commissions based on sales and deliveries made through Amazon, and potentially others, within its territory.  It follows, Plaintiff argues, that the amount of those commissions can only be established through a full accounting of Defendant's sales, revenues, profits, and products sold and delivered within Plaintiff's territory for which Plaintiff has not been paid any commission.

Defendant seeks dismissal of this claim on the basis that it really pleads a remedy as opposed to a stand-alone cause of action and because Plaintiff cannot allege that Defendant owes it a fiduciary duty.  This Court has previously rejected these same arguments.  See Innovative Bowling Prod., LLC v. Exactacator, Inc., No. 2:19-cv-00177-MCE-AC, 2020 WL 4430734, at *8 (E.D. Cal. July 31, 2020) (concluding that a fiduciary relationship is sufficient, but not necessary, to state a claim for an accounting and that "there must be a complexity of the accounts that makes demanding a fixed sum impracticable").  Defendant's Motion to Dismiss this cause of action is DENIED.

### D. Declaratory Relief

Finally, Defendant seeks to dismiss Plaintiff's claim for declaratory relief as duplicative.  At this stage in the pleadings, the Court cannot agree.  Plaintiff requests a declaration as to the parties' future dealings, while the breach claims go to past conduct.  In any event, the Court will allow overlapping causes of action at this early stage in the litigation.  All of this is enough to preclude dismissal now, and Defendant's Motion is DENIED on this point as well.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 20) is DENIED, and its Motion for Protective Order Staying Discovery (ECF No. 28) is DENIED as moot.

IT IS SO ORDERED.

Dated:  March 8, 2023

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE