J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Andrew Levine, Esq. (SBN: 278246)
  levine@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

Melissa R. Ginsberg, Esq. (*Pro Hac Vice*)
  ginsberg@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403
Facsimile: (646) 403-4089

ATTORNEYS FOR DEFENDANT
PEPPERIDGE FARM, INCORPORATED

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITAL DISTRIBUTIONS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PEPPERIDGE FARM, INCORPORATED, a Connecticut corporation,<br><br>Defendant. | Case No: 2:22-cv-00319-MCE-CKD<br><br>**DEFENDANT PEPPERIDGE FARM, INCORPORATED'S STATUS REPORT RE: ECF NO. 112** |

Pursuant to ECF No. 112, Defendant Pepperidge Farm, Incorporated ("Pepperidge Farm") respectfully submits this statement, and the accompanying Declarations of Celeste Petrei, Kyle Jordan, and Andrew Levine, concerning the status of its production of documents responsive to Plaintiff's Requests for Production Nos. 40-43.

**I.     SUMMARY**

The Court has inquired as to the "further status of Defendant's production" and to confirm that "substantial progress is made." (ECF 112 at 2.) Pepperidge Farm states that it has substantially completed the expanded scope of production in response to the Amazon issue, as further articulated in connection with the Court's order. As set forth below and in the accompanying witness declarations, as of today's date, Pepperidge Farm has:

- Produced over 20,000 pages of additional documents responsive to RFPs 40-43.
- Searched, collected and reviewed documents from over 6,000 custodians and company repositories.
- Expended over a thousand hours in document reviewer resources to identify responsive documents, not including tens of thousands of dollars in outside counsel fees expended supervising and reviewing documents, and coordinating discovery with Plaintiff's counsel.
- Engaged in numerous conferences with Plaintiff's counsel to ensure agreement on the scope of Pepperidge Farm's search.
- Substantially completed production in response to the Amazon RFPs.

Pepperidge Farm has done so at its own substantial expense and burden, notwithstanding the express burden and proportionality protections embodied in Rule 26(b) and in Magistrate Judge Newman's underlying discovery order (ECF 44), which expressly cautioned against Plaintiff's use of the order to cause significant or disproportionate burden: "If a heavy burden becomes apparent, the parties are encouraged to explore solutions that provide plaintiff the information it seeks while relieving any overburdensome aspects on defendant." Notwithstanding such limitation, which Pepperidge Farm sought to coordinate with Plaintiff, the company now has incurred hundreds of thousands of dollars in document production costs, review and search fees on a claim whose total

1  conceivable damages in lost commissions from Amazon trade during the period is likely **less than**
2  $100,000.  (Declaration of Kyle Jordan ("Jordan Decl.") at ¶ 9.)

3   The context and history of Pepperidge Farm's efforts to address its discovery obligations
4  are described in further detail in the section which follow.  In brief, following Judge Newman's
5  discovery order, it sought to cooperate with Plaintiff on the scope of key words and custodians, and
6  ultimately produced over 13,000 documents in December 2023.  For the next month or so, the
7  parties largely focused on efforts to settle the case, including in connection with an in-person
8  settlement conference before Judge Newman in December.  When it became clear that settlement
9  was unlikely, the undersigned counsel entered appearance on behalf of Pepperidge Farm as trial
10 counsel and promptly began to engage with Plaintiff's counsel to address discovery issues on both
11 sides.

12   In early-March 2024, the parties were working together to refine search terms to capture
13 additional documents responsive to RFP Nos. 40-43, which Plaintiff claims are relevant to whether
14 the term "retail store" includes e-commerce fulfillment centers within Plaintiff's Territory. Based
15 on those discussions, Pepperidge Farm was reviewing upwards of 10,000 potentially responsive
16 documents when the Court issued its order granting Plaintiff's motion for preliminary injunction.
17 (ECF No. 98.) As part of that order, the Court ordered Pepperidge Farm to promptly complete
18 production of materials responsive to RFP Nos. 40-43 within two weeks.

19   While Plaintiff had not moved to compel Pepperidge Farm to produce documents on that
20 schedule, it appears to have taken Court's order as an invitation to broaden its discovery demands
21 regarding Pepperidge Farm's dealings with its over 3000 *other* Independent Distribution Partners
22 ("IDPs"). Plaintiff claims that unless Pepperidge Farm identifies every single communication with
23 (or concerning) each and every one of its IDPs regarding e-commerce, Pepperidge Farm has failed
24 to comply with its discovery obligations with respect to RFP Nos. 40-43. The Federal Rules of
25 Civil Procedure, however, "do not demand perfection" but instead require that a producing party
26 "conduct a reasonable inquiry[.]" *Asberry v. Relevante*, No. 1:16-cv-01741-LJO-JDP, 2018 WL
27 11347135, at *1 (E.D. Cal. Sept. 4, 2018).
28

Pepperidge Farm has done far more than "conduct a reasonable inquiry." It has gone to great lengths to locate and produce documents responsive to RFPs 40-43, which, again, are relevant only to the disputed definition of "retail store." It has now produced more than 20,000 documents collected in response to those RFPs, spanning more than 120,000 pages and drawn from the accounts of dozens of Pepperidge Farm employees—and it did so by expending *more than 1000 hours* in document review time alone.[1] But the law does not require Pepperidge Farm's discovery efforts to be flawless, and Plaintiff's continued critiques set an impossible and unsupportable standard. Where—as here—the scope of demanded discovery far eclipses the issues at dispute, further discovery becomes needlessly cumulative and is not warranted even under the liberal rules governing civil discovery.  Fed. R. Civ. P. 26(b)(1); *Ohio House, LLC v. City of Costa Mesa*, No. 819CV01710JVSGJSX, 2021 WL 4776369, at *3 (C.D. Cal. Aug. 19, 2021) (denying motion to compel production of documents that "may be relevant" but were not "proportional to the needs of the case"); *Strategic Partners, Inc. v. FIGS*, *Inc*., No. CV 19-2286-GW (KSX), 2021 WL 4813646, at *15-16 (C.D. Cal. Aug. 12, 2021) (declining to require further productions where "additional documents . . . would be unnecessarily cumulative"); *see also Walker v. AT & T Benefit Plan No. 3*, 338 F.R.D. 658, 662 (C.D. Cal. 2021 ("[O]f course, the proportionality considerations under the federal rules of civil discovery always operate in the background to limit, as appropriate, the scope of relevant discovery in any given case.").

That is especially true because Plaintiff has conceded that it seeks speculative *total* monetary damages that are "likely to exceed $1 million," (ECF No. 108 at 8), and only a portion of that amount is even potentially attributable to the "retail store" dispute. Indeed, the total sales to Amazon e-commerce fulfillment facilities within Plaintiff's Territory during the entirety of its distributorship is less than $500,000. Even assuming Plaintiff were entitled to a 20% commission on those sales (which Pepperidge Farm disputes), the amount at stake on this issue would be less

---

[1] This figure excludes additional time spent developing search and review protocols and collecting documents from custodians. Pepperidge Farm believes it production now satisfies even Plaintiff's new demands for documents potentially responsive to RFP Nos. 40-43, with the exception of some further privilege review. To the extent additional responsive documents are discovered in responding to Plaintiff's Requests for Production Sets Two and Three (RFPs Nos. 45 through 75), Pepperidge will further supplement its production.

than $100,000.  (*See* Jordan Decl. at ¶ 9.)  In contrast to the amount at issue, Pepperidge Farm's efforts have consumed well over 1,000 attorney and employee hours, costing Pepperidge Farm more than $ to date.  (Declaration of Andrew Levine ("Levine Decl.") ¶¶ ; Declaration of Celeste Petrei, Senior Director of Records & Information Management / E-Discovery ("Petrei Decl.") ¶ 17-18.)  This mismatch makes clear that Plaintiff's request for perfection creates a burden far from "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

## II. BACKGROUND

### A. RFP Nos. 40-43 Concern One Narrow Issue in the Case

While Plaintiff's First Amended Complaint accuses Pepperidge Farm of breaching the Consignment Agreement in multiple ways—failing to allocate sufficient product, refusing to fill Plaintiff's orders, violating Plaintiff's exclusivity by authorizing other distributors to deliver products in the territory, or improperly delivering products "for Pepperidge Farm's own account" (ECF No. 14 ¶ 84, 85, 86, 88, 93)—RFP Nos. 40-43 do not seek information relevant to *any* of those claims.

Instead, they seek documents concerning a single discrete issue in the broader case: whether the term "retail store" as used in the Consignment Agreement should be understood to include an Amazon warehouse.  The requests at issue are as follows:

> **Request No. 40:** All DOCUMENTS that evidence COMMUNICATIONS between YOU and any of YOUR consignees or distributors RELATING TO the sale or delivery of PRODUCTS to AMAZON.
>
> **Request No. 41:** All DOCUMENTS that evidence COMMUNICATIONS between YOU and any of YOUR consignees or distributors RELATING TO the sale or delivery of PRODUCTS to e-commerce accounts.
>
> **Request No. 42:** All DOCUMENTS RELATING TO payments by YOU to any of YOUR consignees or distributors arising out of delivery of PRODUCTS to AMAZON.
>
> **Request No. 43:** All DOCUMENTS RELATING TO payments by YOU to any of YOUR consignees or distributors arising out of delivery of PRODUCTS to e-commerce accounts.

On their face, each RFP is broadly framed without limitation and seeks categories of material regarding "Amazon" that are neither relevant nor likely to lead to the discovery of relevant

evidence in the case. Further, Plaintiff itself long has long admitted that RFPs 40-43 are relevant only to the disputed definition of "retail store." (*See, e.g.,* ECF No. 38 at 5-21 (Plaintiff argued in August 2023 that RFPs 40-43 are relevant to "whether the term 'retail store' . . . includes . . . online retailers who have a physical building in the Territory[.]"); ECF No. 108 (Plaintiff concedes that the discovery it demands concerns "the meaning of 'retail store'").)

In short, RFP Nos. 40-43 concern only a portion of Plaintiff's claims, which as discussed below and in the accompanying Jordan Declaration are, if proven, worth less than $100,000. (Jordan Decl. ¶¶ 8-9.)

### B. Magistrate Judge Newman's Order

On August 29, 2023, Magistrate Judge Newman held a conference to address these disputed discovery issues. After hearing the parties' arguments, Magistrate Judge Newman granted Plaintiff's motion to compel. But Magistrate Judge Newman did not order Pepperidge Farm to produce all communications, including all text messages, between Pepperidge Farm and its 3,0000 distributors responsive to RFP Nos. 40-43. Instead, Magistrate Judge Newman recognized the potential breadth and burden of the request and ordered the parties to continue to meet and confer to narrow the scope of the search:

> "[T]he court encourages cooperation. If a heavy burden becomes apparent, the parties are encouraged to explore solutions that provide plaintiff the information it seeks while relieving any overburdensome aspects on defendant (*e.g.,* by examining a subset of documents from a random set of distributors, just from Amazon, etc.) See Fed. R. Civ. P. 26, advisory committee notes on the 2015 amendments ('The parties and the court have collective responsibility to consider the proportionality of all civil discovery and consider it in resolving discovery disputes')"

(ECF No. 98 (quoting MJ Newman's Order at ECF No. 44).)

Following Judge Newman's order, Pepperidge Farm proposed search terms, hit counts, and custodians for RFP Nos. 40-43 to Plaintiff. (ECF No. 104-2.) On October 19, 2023, Pepperidge Farm shared those proposed search terms with Plaintiff, but Plaintiff did not provide substantive feedback. (ECF No. 104-3.) Pepperidge Farm used those broad terms to conduct its search and produced all responsive, non-privileged documents hitting on those terms (a universe spanning

approximately 13,000 pages of documents) by December 5, 2023. (Petrei Decl. ¶ 4; *see also* ECF No. 104-3.)

### C. The Court's Order Compelling Further Productions

Plaintiff did not move to compel further compliance with Magistrate Judge Newman's Order. Instead, while the parties were engaged in meet and confer efforts concerning additional search terms and collections in February and March 2024 (*see, e.g.,* ECF No. 104-6, 104-8, 104-9, 104-10), Plaintiff informally raised complaints regarding Pepperidge Farm's discovery compliance in its motion for preliminary injunction. (ECF No. 83-1.) Much of Plaintiffs briefing on the motion for preliminary injunction were dedicated to these discovery complaints. (*See, e.g.,* ECF Nos. 83-1 at 6-7, 16-18.)

At the March 28 hearing on Plaintiff's motion for preliminary injunction, the Court too focused on these unripe discovery disputes. In addition to addressing what it believed was Pepperidge Farm responses to RFPs 40-43, the Court summarily struck Pepperidge Farm's document request to Plaintiff, which sought disclosure regarding Plaintiff's litigation funding. (ECF No. 98 at 33; *see also* ECF 87-1 (Hagey Declaration) at ¶¶ 20-27 (explaining the basis for and relevance of these requests).) At that point, Plaintiff had yet to respond to Pepperidge Farm's requests, had not engaged in any meet-and-confer efforts, and had not sought a protective order.

On April 6, 2024, the Court issued an order granting Plaintiff's motion for preliminary injunctions. (ECF No. 98.) The Order also addressed several administrative matters. The Court (i) ordered Pepperidge Farm to provide documents responsive to RFPs No. 40-43 within 5 days of the Order, by April 11, (ii) ordered Plaintiff to submit a status report regarding Pepperidge Farm's production on April 12, (iii) struck Pepperidge Farm's "requests for evidence and/or information pertaining to Plaintiff's financing of this litigation", and (iv) granted Plaintiff leave to amend its complaint. (*Id.* at 33-34, 35.)

Plaintiff filed its status report on Friday, April 12. (ECF No. 102.) At 8:24 p.m. that evening, the Court ordered Pepperidge Farm to respond to Plaintiff's status report by no later than 5:00 p.m. the next day, Saturday, April 13. (ECF No. 103.) Pepperidge Farm filed its response on Saturday, April 13. (ECF No. 104.) The Court then ordered Plaintiff to submit a reply by no later

than 5:00 p.m. on Monday, April 15. (ECF No. 105.) Plaintiff filed its reply on April 15. (ECF No. 108.) And on April 16, the Court issued the instant order (the "April 16 Order"), finding Pepperidge Farm in violation of Magistrate Judge Newman's Order (ECF No. 44) and the Court's preliminary injunction order (ECF No. 98) and directing Pepperidge Farm to produce documents responsive to RFPs No. 40-43. (ECF No. 112.)

The April 16 Order also held that Pepperidge Farm could not "withhold responsive material from its bakery division" (*id.* at 1), even though Plaintiff's RFPs. Nos. 40-43 did not seek documents regarding Pepperidge Farm's "bakery division." Indeed, *Plaintiff* has now conceded that "Vital has not argued and will not argue . . . that Pepperidge Farm's failure to produce documents for Bakery (as opposed to Snacks) distributors is a violation of Judge Newman's Order" and confirmed that it "will confirm the same in Vital's further status report to be filed Wednesday and on the record if needed at the hearing." (Levine Decl. Ex. 3.)

The Court ordered the parties to submit simultaneous briefing regarding the status of Pepperidge Farm's production in response to RFPs No. 40-43 by April 24 and stated that "[u]nless substantial progress is made, the partis should be prepared to discuss sanctions[.]" (ECF No. 112 at 2.)

### III.   PEPPERIDGE FARM'S DILIGENT DISCOVERY EFFORTS

#### A.   Collections and Productions from October 2023 through April 11, 2024

In its previous status report to the Court, Pepperidge Farm detailed its diligent efforts to search for and produce documents responsive to RFPs. No. 40-43. (ECF No. 104 at 3-5.)

Briefly, following issuance of Magistrate Judge Newman's order and consistent with Magistrate Judge Newman's directive to *both* Parties to cooperate with one another, Pepperidge Farm proposed search terms and then disclosed the custodians and hit counts for those search terms to Plaintiff. (*Id.* at 3; ECF 104-2 (October 2023 search terms and hit counts). Pepperidge Farm shared those search terms and hit counts with Plaintiff before it began its review, but Plaintiff did not respond or provide feedback regarding the terms. (ECF No. 104-3.) Pepperidge Farm then produced roughly 13,000 pages of documents hitting on those terms by December 5, 2023. (Levine Decl. ¶ 12; Petrei Decl. ¶ 4; *see also* ECF No. 104-4.) Pepperidge Farm believes that it had

complied with Magistrate Judge Newman's order and obligation under the Federal Rules of Civil Procedure when it made that production.

After the Parties engaged in unsuccessful settlement discussions, however, Plaintiff raised new issues with this production in early 2024, and the parties engaged in subsequent meet-and-confers—as ordered by Magistrate Newman—to expand the scope of Pepperidge Farm's search by agreeing to additional search terms and custodians. After this initial set of terms proved too broad—they returned approximately 475,000 separate documents—the parties worked to narrow the terms. (ECF Nos. 104-8, 104-9.) Pepperidge Farm then ran searches using updated terms proposed by Plaintiff and began a document-by-document review of roughly 10,000 documents. (ECF No. 104-10.) The documents were collected from numerous custodians based on Plaintiff input. Pepperidge Farm also collected documents from two group emails, which it believed were likely to contain communications and documents on IDPs and e-commerce: csnacks__mapping@campbells.com, a group email used for mapping IDP territories and identifying, for example, in which IDP territory an e-commerce facility that desires direct-store-delivery is located; and PFRoutepackages@pepperidgefarm.com, a group email that sends out new document to IDPs, including, for example, e-commerce acknowledgments and addendum. (Petrei Decl. ¶ 4.)

In addition to the above searches and collections, on April 1, Pepperidge Farm reached out to more than 40 Vice Presidents and Zones Sales Managers across the country and asked them to identify other IDPs it should search for. (*Id*. ¶ 12.) Pepperidge Farm also generated reports from its databases reflecting payment to IDPs in connection with e-commerce facilities or Amazon Fresh physical stores and conducted additional searches using the names of IDPs who had declined to signed an e-commerce acknowledgement. (*Id*. ¶ 14.)

Based on these searches (and in addition to the rough 13,000 pages of documents responsive to RFPs Nos. 40-43 it produced in December 2023), Pepperidge Farm made the following productions:

| Date of Production | Documents Produced | Pages Produced |
|---|---|---|
| April 2, 2024 | 960 documents | 4,224 pages |
| April 5, 2024 | 1,607 documents | 6,855 pages |
| April 11, 2024 | 602 documents | 1,764 pages |

(Levine Decl. ¶¶ 6-7; *see also* Petrei Decl. ¶ 4.)

**B.    Collections and Production from April 11 through April 23, 2024**

Pepperidge Farm believes that its production in December 2024 of documents responsive to RFPs Nos. 40-43 satisfied its obligations under the Federal Rules of Civil Procedure and the Court's Orders to "conduct a reasonable inquiry" into responsive documents. *See, e.g., Asberry*, 2018 WL 11347135, at *1 (finding that courts considering reasonableness of a producing party's inquiry "tak[e] into account 'the burdensomeness and importance of the discovery requested' and the court's obligation to secure 'the just, speedy, and inexpensive determination of every action.'") (quoting *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013)).

Pepperidge Farm's production through April 11, which included cumulative production on the same issues, went above and beyond what is required. Nevertheless, Pepperidge Farm has nevertheless continued to search for, collect, review, and produce additional documents responsive to RFPs No. 40-43.

Among other things, Pepperidge Farm has now conducted rounds of additional searches—including searches for new terms demanded by Plaintiff, including "MFC." (Petrei Decl. ¶ 7.) Pepperidge Farm also added searches for *all* IDPs who have received any e-commerce related payments. (*Id*. ¶ 14.) Pepperidge Farm also contacted nearly 400 employees and directed them to conduct a manual search to locate and provide to counsel any text messages, emails, or other documents concerning the sale or delivery of products to Amazon or any ecommerce accounts, and any payments made to IDPs for delivery of products to Amazon or any ecommerce accounts. (*Id*. ¶ 13.) The recipients of those instructions included all regional vice presidents, zone sales managers, market development leads, and market sales leads, as well as other individuals likely to have responsive documents, including Kyle Jordan. (*Id*.) Pepperidge Farm also searched its databases to

create and produce summary spreadsheets containing data regarding e-commerce sales and commissions paid to IDPs. (*Id.* ¶ 14.)

As a result of those efforts, Pepperidge Farm has made four additional productions since April 11. Below is a summary table of those productions:

| Date of Production | Documents Produced | Pages Produced |
| --- | --- | --- |
| April 12, 2024 | 1 document | 1 page |
| April 20, 2024 | 1,385 documents | 9,606 pages |
| April 22, 2024 | 11,964 documents | 81,420 pages |
| April 24, 2024 | 758 documents | 5,588 pages |

**C.     Plaintiff's Criticism of Pepperidge Farm's Discovery Compliance Is Without Merit**

In its status report filed on April 12 and April 15, Plaintiff acknowledged that Pepperidge Farm's April productions included hundreds (if not thousands) of documents responsive to RFPs No. 40-43 (*See, e.g.,* ECF No. 102-1 ¶¶ 21-23; ECF No. 108 at 2-3.) Nevertheless, Plaintiff criticized Pepperidge Farm's production and continues to seek more, cumulative discovery regarding the discrete issue of Pepperidge Farm's communications with hundreds of IDPs regarding e-commerce acknowledgments.

Plaintiff now claims that Pepperidge Farm only searched for and produced communications with IDPs that "it knows Vital can prove exist[.]" (ECF No. 108 at 4, 6)[2] This is not true. As noted above, Pepperidge Farm searched for responsive documents after identifying relevant IDPs, with whom Pepperidge Farm might have had communications regarding e-commerce or the e-commerce acknowledgment. (Petrei Decl. ¶ 4.)

---

[2] Plaintiff has used its access to a private Facebook group, Pepperidge Farm Owner's Association of America Facebook page, to identify communications between Pepperidge Farm and IDPs that it claims suggest Pepperidge Farm has not produced responsive documents. (Levine Decl., Ex. 1.) While Plaintiff has access to the Facebook group (and Pepperidge Farm does not), it has selectively identified posts that it believes are helpful but refused to collect all responsive posts from the page. Plaintiff claims that if Pepperidge Farm wants discovery from the Facebook page to which Plaintiff is a member and has access, it must subpoena Facebook. (Levine Decl., Ex. 2.)

Plaintiff also claims that Pepperidge Farm did not ask its employees who among them would have relevant communications concerning e-commerce or the e-commerce addendum. But as noted above, Pepperidge Farm contacted nearly 400 employees who have direct contact with IDPs or oversee Pepperidge Farm engagement with IDPs, and asked that they collect for review any communications (text messages, emails, or otherwise) in their possession that may be responsive to RFPs Nos. 40-43. (Petrei Decl. ¶ 14.)

Plaintiff next claims that Pepperidge Farm was somehow obligated to produce documents and communications regarding its bakery division and bakery IDPs e-commerce agreements and activities in response to RFPs No. 40-43.[3] But Plaintiff has consistently excluded bakery from the scope of RFPs No. 40-43. In fact, Plaintiff's own document requests repeatedly carve out "Bakery" products. For example, in RFP Nos. 40-43, Plaintiff expressly defined the term PRODUCT to focus on "cookies, crackers, and other snack products"—not Bakery items.[4]

Moreover, Plaintiff stated in meet-and-confer correspondence that "Bakery" products should be excluded:

> "As for Pepperidge Farm's Interrogatories and productions, yes, it would be appreciated if an amended response eliminates the bakery and frozen division. I tried to make it clear in the definition of PRODUCTS that we are dealing with snacks, not the other divisions."

(ECF No. 104-16 (email dated December 5, 2023).)

---

[3] During a telephonic meet-and-confer on April 22, 2024, counsel for Plaintiff confirmed its understanding—contrary to its prior submissions and representations to this Court—that Magistrate Judge Newman's order did not require Pepperidge Farm to produce any "Bakery"-related documents. Plaintiff memorialized that confirmation in an email, stating: "Vital has not argued and will not argue this week that Pepperidge Farm's failure to produce documents for Bakery (as opposed to Snacks) distributors is a violation of Judge Newman's Order. . . We will confirm the same in Vital's further status report to be filed Wednesday and on the record if needed at the hearing." (Levine Decl. Ex.3.)

[4] (ECF No. 104-15 (RFP Set No. 1) at 2 (Plaintiff's RFPs defining "PRODUCTS" to refer "to all of YOUR cookies, crackers, and other snack products, including but not limited to, Goldfish, Milano Cookies, Farmhouse Cookies, Chessmen Cookies, in addition to any other of YOUR products encompassed by the term 'Consigned Products' as such term is used in the CONSIGNMENT AGREEMENT.").

This exclusion appears throughout the rest of Plaintiff's discovery requests, too. (*See, e.g.,* (ECF No. 104-14 (Interrogatory Nos. 17-19 (seeking information "except" for Bakery items); (ECF No. 104-17 (RFP No. 49 seeking evidence of deliveries "except" for Bakery items).) Plaintiff cannot credibly claim that Pepperidge Farm has not complied with its discovery obligations by pointing to material it explicitly asked Pepperidge Farm to exclude both in the requests themselves and during the meet-and-confer process.

Finally, Plaintiff asserts without support that communications between Pepperidge Farm and every IDP who might service an Amazon Fresh *grocery store* might be relevant to whether "retail stores" includes Amazon *e-commerce fulfillment warehouses*. Plaintiff's theory stretches relevance to an extreme level. As just one example, Plaintiff focuses much attention on communications between Pepperidge Farm and an IDP named Ray Ramljak. (ECF No. 108 at 1-3.) But Mr. Ramljak's communications concern an Amazon Fresh grocery store—a quintessential retail store, where retail customers peruse the aisles for products displayed on retail shelves. The store at issue in those communications and Mr. Ramljak's concerns with a different issue (*i.e.*, Amazon Fresh's preference to receive product directly rather than via "direct store delivery") has very little to do with whether a warehouse in Sacramento is a retail store.

Below is google street image of the Amazon Fresh grocery store located at 16 A E Golf Rd. Schaumburg, IL 60173 in Mr. Ramljak's territory:



As compared to the Amazon e-commerce fulfillment center at 3640 Ramos Drive, West Sacramento 95691 in Plaintiff's territory:



In any event—and as Plaintiff concedes—Pepperidge Farm has produced over 100 emails "specifically involving emails between Mr. Jordan and Mr. Ramljak" related to disputes over this Amazon Grocery Store. (ECF No. 108 at 2-3.) Any additional discovery regarding these issues would be cumulative at best and certainly not proportionate to the needs of the case or the amount in controversy. *See, e.g., Asberry*, 2018 WL 11347135, at *1.

## IV.  PEPPERIDGE FARM'S COSTS INCURRED RESPONDING TO RFPS NO. 40-43

Although the scope of civil discovery is broad, courts in the Ninth Circuit and across the country recognize that the burdens of discovery must be proportionate to both the issues in dispute and the amount in controversy.[5] *See, e.g., Ohio House, LLC*, 2021 WL 4776369, at *3 (acknowledging that requested documents "may be relevant," but denying motion to compel further productions that were not "proportional to the needs of the case" and did not "outweigh[] the

---

[5] Federal Rule of Civil Procedure 26(b)(1) provides in relevant part:

> **Parties may obtain discovery** regarding any nonprivileged matter that is relevant to any party's claim or defense and **proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy**, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, **and whether the burden or expense of the proposed discovery outweighs its likely benefit**.

(Emphasis added).

burden to [defendant] in producing whatever discovery may exist"); *Strategic Partners, Inc.*, 2021 WL 4813646, at *15 (declining to require further productions in light of substantial prior production, finding that "additional documents . . . would be unnecessarily cumulative").

Magistrate Judge Newman's order reflects this necessity, noting that the Parties should avoid imposing a "heavy burden" on Pepperidge Farm by "explor[ing] solutions that provide plaintiff the information it seeks while relieving any overburdensome aspects on defendant (*e.g.,* by examining a subset of documents from a random set of distributors, just from Amazon, *etc.*)." (ECF No. 98 at 11 (quoting MJ Newman's Order at ECF No. 44).) In other words, Magistrate Judge Newman recognized that Plaintiff was not necessarily entitled to *every* potentially relevant document in Pepperidge Farm's possession, so long as Pepperidge Farm endeavored to produce documents sufficient to the needs of this case.

Pepperidge Farm has done that, and more. To date, Pepperidge Farm has enlisted:

- Nearly 400 employees for help identifying and collecting documents potentially responsive to RFP Nos. 40-43, (Petrei Decl. ¶¶ 4, 11, 13);
- 25 reviewing attorneys and one project manager at Pepperidge Farm's outside contract reviewer, who have spent approximately 650 hours reviewing potentially responsive documents, (*id.* ¶ 17);
- Attorneys and paralegals at the undersigned outside counsel, who have spent approximately 428 hours solely reviewing potentially responsive documents and an additional approximately 160 hours on other tasks related to the review and production of such documents, (Levine Decl. ¶¶ 20-23); and
- Pepperidge Farm's e-discovery vendor, who provided technical support, facilitating the collections, and preparing the productions at a cost of roughly $220,000 (Petrei Decl. ¶ 18).

The total costs to Pepperidge Farm to date are at least $114,753.00 (Petrei Decl. ¶¶ 16-18; Levine Decl. ¶¶ 20-23.)

Pepperidge Farm's costs and burdens far outweigh the amount at stake with respect to the disputed definition of "retail store," which is worth less than $100,000 in allegedly lost

1  commissions.[6] (Jordan Decl. ¶¶ 8-9.) But even setting aside financial disproportionality, the costs
2  and burdens imposed on Pepperidge Farm to date *also* outweigh the extent to which additional,
3  cumulative information is needed (or not) to resolve the only dispute to which it is relevant:
4  whether an Amazon warehouse is a "retail store." Plaintiff has now received nearly 13,000 pages of
5  documents responsive to RFP Nos. 40-43, including more than 100,000 pages of documents
6  produced since April 1, 2024. (Levine Decl. ¶ 7.) Plaintiff has not articulated any basis to demand
7  more (to the extent additional responsive documents exist)—nor can it consistent with the rule of
8  proportionality and Magistrate Judge Newman's order. Put simply, Plaintiff has already received
9  voluminous discovery that far exceeds the requirements of the Rules. Fed. R. Civ. P. 26(b)(1)
10 (requiring that discovery be limited according to "whether the burden or expense of the proposed
11 discovery outweighs its likely benefit").

V.   **THE PARTIES' ONGOING DISCOVERY EFFORTS**

Notwithstanding Pepperidge Farm's huge expenditure of time and effort searching for, collecting, reviewing, and producing documents responsive to RFP Nos. 40-43, the Parties have also continued to press forward with ongoing discovery efforts related to the bulk of the issues in this case. The Parties recently held a productive meet-and-confer session on April 22, focusing in large part on Plaintiff's failure to comply with outstanding discovery demands, including Plaintiff's failure to produce text messages, financial documentation, documents relating to Plaintiff's retention and compensation of employees, and information accessible to Plaintiff through a Facebook account. (*See* Levine Decl. Exs. 1 & 2.)

***Text Messages***: On March 11, Plaintiff committed to producing responsive text messages, but to date has produced only his texts with one former Pepperidge Farm employee, along with a handful of photographs of text messages between Mr. Holmes and his mother and fellow IDP. (Levine Decl. Ex 1 at 6-7; Levine Decl. Ex. 2.) Plaintiff has also refused to produce text messages

---

[6] Although Plaintiff suggests that the value of its requested declaratory relief should be included in this assessment, Plaintiff has offered no credible, supportable valuation of that relief. Indeed, since potential commissions were only $100,000 over the past six-plus years—*before* netting out business expenses—there is not a significant cash flow from these locations that would justify Plaintiff's speculation.

from any of its employees other than Mr. Holmes, asserting that no employee possesses any text message responsive to any of Pepperidge Farm's discovery demands. *(*Levine Decl. Ex 1 at 6-7.) Notably, *none* of Plaintiff's text productions to date include all metadata and are either missing images, are non-searchable, or missing standard metadata that is kept in the ordinary course. (*Id.*)

      ***Damages-Related Financial Documentation***: Although Plaintiff purports to seek lost profits and has conceded that it bears the burden of proving that claim, it has not produced a single financial statement, balance sheet, or other financial document. (Levine Decl. Ex 1 at 2, 5; Levine Decl. Ex. 2*.*) While Plaintiff acknowledges that its damages expert will need to rely on Plaintiff's financial records, he has refused to confirm whether and when he will produce this information to Pepperidge Farm. (*Id .*)

      ***Formal or Informal Employment Agreements / Policies***: Plaintiff has refused to produce any documents evidencing its relationship with employees. Plaintiff has taken the position that it possesses no *formal* employment agreements, but it ignores Pepperidge Farm's requests for any written communications with Plaintiff's employees regarding the conditions of their employment, its terms, or their compensation—all of which would be relevant to what damages, if any, Plaintiff has incurred. (*Id.*)

      ***Facebook Posts***: Plaintiff has produced cherry-picked posts from a "Pepperidge Farm Owners of America" Facebook page that it believes are helpful to its position, but it has refused to produce *other* responsive posts from that Facebook page. (Levine Decl. Ex 1 at 4; Levine Decl. Ex. 2.) Instead, Plaintiff has insisted that Pepperidge Farm should subpoena Facebook and/or the administrator of the Facebook page at issue. (*Id*.) Plaintiff has not responded to any of the authority cited by Pepperidge Farm and offered no authority for the proposition that a party who has access to a document repository—and has, in fact, already produced documents from that repository—can impose on third parties the costs and burdens of producing further responsive documents from the same repository. (*Id*.)  Nor can it, because that is not the law. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii); *Rhone v. Schneider Nat'l Carriers, Inc.*, 2016 WL 1594453, at *3 (E.D. Mo. Apr. 21, 2016) (granting request to produce all Facebook data when defendant already made a showing that some relevant information existed on the Facebook profile); *Baxter v. Anderson*, No. 3:16-cv-00142-

JWD-RLB, 2016 WL 4443178, at *2 (M.D. La. Aug. 19, 2016) (noting that "relevant information posted on social media" is "generally discoverable"); *Holter v. Wells Fargo & Co.*, 281 F.R.D. 340, 345 (D. Minn. 2011) (ordering that "Plaintiff shall produce to defendant all responsive social media content and communications").

## VI. CONCLUSION

Pepperidge Farm has diligently searched for and produced documents responsive to Plaintiff's RFP Nos. 40-43. It has made more than substantial progress toward completing that production. Its production is substantially complete. To the extent additional documents responsive to these requests are discovered in responding to additional, in some cases overlapping requests in Plaintiff's RFPs Sets Two and Three, Pepperidge Farm will further supplement its production.

Dated: April 24, 2024                               Respectfully submitted,

                                                    BRAUNHAGEY & BORDEN LLP

                                                    By: */s/ Andrew Levine*
                                                            Andrew Levine

                                                    *Attorneys for Defendant*
                                                    *Pepperidge Farm, Incorporated*

17                          Case No. 2:22-cv-00319-MCE-CKD
DEFENDANT PEPPERIDGE FARM, INCORPORATED'S STATUS REPORT RE: ECF NO. 112